COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Agee and Senior Judge Coleman


YOLANDA C. WILSON

v.    Record No. 0362-02-1

JAMES CITY COUNTY
 DIVISION OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
SEPTEMBER 10, 2002


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Samuel Taylor Powell III, Judge

(Susanna B. Hickman; Geddy, Harris, Franck &
Hickman, L.L.P., on brief), for appellant.

(Frank M. Morton, III, County Attorney;
Greg H. Dohrman, Assistant County Attorney;
Alice K. Twiford, Guardian ad litem for
Idalia Wilson; Frances S. Taylor, Guardian ad
litem for Marquise Wilson, on brief), for
appellee.


Yolanda C. Wilson (appellant) appeals the decision of the

trial court terminating her parental rights to two of her minor

children, Marquise and Idalia.  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without

merit.  Accordingly, we summarily affirm the decision of the trial

court.  See Rule 5A:27.

_____

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

"Upon appellate review, we must review the facts in the light most favorable to the party prevailing below." Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999).

On January 15, 2002, the trial court conducted a hearing on the matter. Cherrye Cole, who was formerly employed with the Gloucester County Division of Social Services (GC DSS), testified that she worked with the family in 1998 after one of appellant's children was placed in foster care. That child is not the subject of this appeal. At that time, GC DSS developed a foster care service plan that provided, among other things, that the entire family should attend family counseling and establish a stable home environment. The plan also provided for visitation and required that appellant attend parenting classes. Cole testified that appellant's compliance with the plan was "sporadic." She did not attend counseling services, and she did not enter or complete parenting class. She also visited the children infrequently. Cole stated that the family had a continuing problem with the inability to maintain a stable home and sometimes lacked food and electricity.

In 1998, the family moved to James City County. On March 3, 1999, the James City County Division of Social Services (JCC DSS) filed a petition for an emergency removal order regarding Marquise and Idalia. The children were with their father when he was arrested and taken to jail on March 2, 1999. Appellant was in

-

jail at that time for a felony child neglect offense. Appellant has also been convicted of physically assaulting Marquise, and the children's father has been convicted for the assault and battery of a child.

Marquise and Idalia have been in foster care since April 1999. Melanie White of JCC DSS testified that the initial foster care service plan for the children had a goal of return home. Because appellant was in jail at the time, the plan primarily addressed services for Kelly Wilson (Wilson), the children's father, upon his release from jail. White testified that Wilson did not complete the services outlined in the plan and the children were not returned to the home.

The trial court has never approved a plan for appellant. However, when appellant was released from jail, White met with her and discussed a plan developed by JCC DSS, explaining that appellant needed to maintain stable employment and housing, have a personality and psychological evaluation, and complete a parenting class. White testified that, although appellant "thought" she had completed some of the services, appellant's participation in the services was "very minimal," particularly concerning the counseling and the emotional needs of the children.

White testified that when appellant was released from jail, appellant initially visited the children. However, starting in the spring of 2001, appellant frequently cancelled the visits or failed to appear for scheduled visits. Appellant completed one

parenting class and completed the psychological evaluation.  She attended three of five counseling classes concerning special needs children.  White stated that appellant has changed employment numerous times.

Appellant's psychological evaluation indicated that appellant "lacks the adequate resources to nurture and protect" the children.  The evaluation further found that appellant was "at risk of abusing her children in the future" and recommended that she not have unsupervised visitation with the children.

White stated that in October 2001, appellant expressed a desire to give up her rights to Marquise, stating that he was "in a good place."  White also testified that when Marquise first came to foster care, he had numerous behavior problems.  He has been diagnosed with Bipolar disorder, Dysthymia, ADHD, and Oppositional Defiant Disorder.  He has taken several types of medications to manage his behavior.  Marquise was placed with his current foster mother, Clara Brown, in 1999, and his behavior has improved since that time.

Brown testified Marquise is "better now," and he has been seeing therapists.  She stated he is a "totally different person" than he was when he first arrived in her home, and he has exhibited more "control" over his behavior.  Brown stated that Marquise is more difficult to control after he visits with appellant or his father.  Brown testified that appellant has

-

telephoned Marquise about five or six times in the past several years.

Idalia entered foster care when she was three years old. She was "highly sexualized," was attending counseling sessions, and was taking medications for behavior management. She has been diagnosed with Oppositional Defiant Disorder and appears to have suffered sexual abuse. White stated that Idalia is very intelligent, but she has high emotional needs. She needs "continual modification interventions." Idalia has been in therapy concerning sexualized behavior issues. A psychological evaluation of Idalia dated December 5, 2000 recommended that, due to allegations of physical abuse, appellant should have only supervised visitation with Idalia until a parenting capacity evaluation was performed.

Amy Burks, Idalia's foster parent for about five months, testified that she has had to retrieve Idalia from school when she exhibits behavioral problems, which usually occurs just after she visits with her parents. She stated that Idalia exhibits the behavior by jumping up and down and hitting her head against the wall. Burks stated that Idalia "does great at home," and Burks participates in Idalia's counseling sessions. Burks testified that Idalia's behavior has improved while she has lived with Burks and that she is interested in adopting Idalia.

White opined that it was in the best interests of the children to terminate appellant's parental rights. The children

-

have been in foster care for about three years. White stated they needed stability, security, safety and nurturing. The current foster homes are meeting those needs for the children, and the foster parents are interested in adopting the children. White stated that appellant has not completed the services necessary to meet the children's needs. The guardians <u>ad</u> <u>litem</u> for the children also recommended termination of appellant's parental rights.

At the time of the hearing, appellant was employed and had a residence. She testified she planned to take a parenting class with emphasis on children with behavioral issues. She stated that she had not taken the class before because it was not available to her. Appellant testified she attended every scheduled visitation with her children with the exception of those dates that coincided with her court dates. She indicated that social services often did not reschedule the visits that she was unable to attend. Appellant stated that she intended to begin counseling in the next month and that she had already taken one parenting class.

Appellant did not know how Marquise was performing in school. Appellant has never telephoned the foster home where Idalia is placed. She did not know how Idalia was performing in school or in counseling.

The trial court found that, pursuant to Code § 16.1-283(C)(2), it is in the best interests of the children to terminate appellant's parental rights and the requirements of the

-

statute have been met.  The trial court found that appellant has not completed the programs she needs in order to take care of the children.  Furthermore, although the children have been in foster care for almost three years, appellant is just starting to enter the suggested programs.  The court found that social services had made reasonable efforts to provide programs for appellant, but that she has not taken advantage of the programs.  The court also found that the children needed permanency.  Accordingly, the trial court terminated appellant's parental rights.

ANALYSIS

Under Code § 16.1-283(C)(2), the trial court can terminate a party's parental rights if the parent has "been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement."

Marquise and Idalia have spent almost three years in foster care.  For part of that time period, appellant was incarcerated for a felony child neglect offense and for a charge of physically assaulting Marquise.  Furthermore, during the three years, appellant has failed to participate in most of the recommended programs that would teach her how to meet the special needs of the children and to rectify the conditions that perpetuate the children in foster care.  In addition, her psychological evaluation indicates that appellant lacks the resources to nurture

the children, and she is at risk for abusing the children. Appellant has made some progress toward meeting the children's physical needs, but not their significant emotional or psychological needs.  Moreover, the children are improving while in foster care.

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).  On appeal, we presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."  Id. at 329, 387 S.E.2d at 796.  Furthermore, "[w]here, as here, the trial court heard the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

The trial court did not abuse its discretion by determining it was in the best interests of the children to terminate appellant's residual parental rights.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

Affirmed.

-